IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | |
|---|---|
| SEAN MILLER and CHRISTINE MILLER, | : |
| Plaintiffs, | : Civil Action No.: 1:16CV-133-GNS |
| v. | : |
| DITECH FINANCIAL, LLC, f/k/a GREEN TREE SERVICING LLC; EXPERIAN INFORMATION SOLUTIONS, INC., | : **COMPLAINT** <br> : **JURY TRIAL DEMANDED** |
| Defendants. | : |

## JURISDICTION

1. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, and all Defendants transact business here.

## PARTIES

3. Plaintiff Sean Miller is a natural person and a staff sergeant in the U.S. Army who currently resides Ft. Hood, Texas. Plaintiff is a consumer as defined by 15 U.S.C. § 1681a(b) and (c).

4. Plaintiff Christine Miller is a natural person and the wife of Sgt. Miller who currently resides in Ft. Hood, Texas.

5. Green Tree Servicing LLC, a Delaware limited liability company, merged with Ditech Mortgage Corporation, and both became Ditech Financial LLC ("Ditech"). Ditech is a California corporation with its principal place of business located at 6875 Shady

1

Oak Road, Eden Prairie, Minnesota 55344.

6. Ditech is a furnisher of information to the major credit reporting agencies, including Equifax.

7. Defendant Experian Information Solutions, Inc. ("Experian") is a corporation incorporated in the state of Ohio and is authorized to do business in the State of Kentucky, and is registered with the Kentucky Secretary of State with a registered agent located in Kentucky.

8. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by 15 U.S.C. §1681a(p).

9. Experian is regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

## FACTS

### Purchase and Disposition of the Mobile Home

10. On or about October 21, 1999, Sgt. Miller's grandmother executed a Retail Installment and Security Agreement for $35,088.12 with Defendant to purchase a mobile home for use by Sgt. Miller's brother. *See* Agreement, attached hereto as Exh. A.

11. Ms. Morris placed the mobile home, along with her own, on property she owned at 329 Alton Lane, Morgantown, Kentucky.

12. In or around November 2003, Ms. Morris passed away. No will was probated or recorded, but Ms. Morris' two daughters, including, Plaintiff's mother Linda Miller (nee Morris), inherited the trailer by operation of law. Ky. Rev. Stat. §§ 391.010, 391.030.

13. To the extent any will existed, Sgt. Miller never accepted any bequest.

14. Sgt. Miller's brother vacated the trailer in or around the summer of 2003.

15. From approximately the summer of 2003 to November 2008, Plaintiff s resided in the mobile home as tenants of Linda Miller. For their occupancy of the mobile home, Plaintiffs paid approximately $330 per month to her in rent.

16. Linda Miller made payments to Ditech on the trailer for some period of time then ceased doing so.

17. Sgt. Miller never made direct payments to Ditech on the trailer, nor did they assume title to it.

18. In or around 2008, an attorney for Ditech contacted Sgt. Miller and inquired whether his grandmother had left him any property. He informed the attorney that she had not.

**Default Judgment**

19. On November 12, 2008, Sgt. Miller enlisted as an active duty member of the U.S. Army. *See* Enlistment Document, attached hereto as Exh. B.

20. In June 2009, the Army relocated Plaintiffs to Fort Riley, Kansas. *See* Change of Station Orders, attached hereto as Exh. C.

21. On May 15, 2009, Defendant filed a complaint in Butler Circuit Court against "Mary L. Morris," "Shawn Mille," "Tina Mille," and "Unknown Heirs of Mary L. Morris" to recover $29,418.48 outstanding on the debt for the mobile home. *See* Complaint, attached hereto as Exh. D.

22. Upon information and belief, "Shawn Mille" and "Tina Mille" were intended to reference Plaintiffs.

23. The Complaint specifically indicated that both "Shawn" and "Tina" were made parties to the action so that they could "assert whatever interest, claim or lien [they] may have in and to the subject real property or be forever barred." *Id.* at ¶¶ 8-9.

24. Neither Linda Miller nor her sister, the direct heirs of Ms. Morris, were made parties to the suit.

25. Sgt. Miller's brother was also not made party to the suit.

26. The Complaint demanded repossession of the mobile home and a deficiency judgment against Ms. Morris. *Id.* at p. 3.

27. Neither Plaintiff was ever served with the Complaint, and no proof of service was ever filed as to either of them. *See* Summons, attached hereto as Exh. E.

28. On August 7, 2009, Defendant filed for a default judgment against the "Unknown Heirs of Mary L. Morris" and noticed the dismissal of "Shawn Miller" and "Tina Miller" from the action. *See* Motion for Default Judgment, attached hereto as Exh. F.

29. Plaintiffs did not receive any copies of the Motion by mail.

30. The Butler County Circuit Court entered a default judgment against the "Unknown Heirs of Mary L. Morris" on August 11, 2009. The caption on the default judgment included "Shawn Mille" and "Tina Mille." *See* Default Judgment, attached hereto as Exh. G.

### Misreporting of Default Judgment

31. In March 2010, Sgt. Miller deployed to Iraq.

32. Upon Sgt. Miller's return from Iraq in 2011, Plaintiffs was stationed at Fort Rucker, Alabama.

33. Though they had dealt with financial trouble in the past, Plaintiff were in the process of rehabilitating their credit and believed they would be eligible for Veterans Administration loans to purchase a house.

34. When Plaintiffs applied for the loan in late 2011, however, they were denied based on the default judgment, of which they were not, at the time, aware.

35. Sgt. Miller was confused by the presence of the default judgment and believed it had been reported in error.

36. In late 2011, Sgt. Miller obtained a copy of his credit report from Experian.

37. In December 2011, he disputed the default judgment entry with Experian.

38. Upon information and belief, Experian timely notified Ditech of the dispute, pursuant to its statutory duty.

39. Defendants' attribution of the default judgment to Sgt. Miller was inaccurate because he was dismissed from the matter prior to entry of the default judgment, a fact readily apparent from a review of public records.

40. Defendants each had a statutory duty to investigate the accuracy of the reporting of the default judgment.

41. After investigation, however, the entry remained unchanged on the credit report, listed as "Joint" with Mrs. Miller. *See* December 2012 Experian Credit Report, relevant portions of which are attached hereto as Exh. H.

42. The Butler County Clerk lists no default judgment against either Plaintiff.

43. Defendants failed to reasonably investigate a basic fact of public record. It need not even have determined whether a judgment was paid. It need only have taken

5

account of the notice of dismissal in the Motion for Default Judgment or the simple reality that the Default Judgment itself *does not list* either Plaintiff.

44. Though Sgt. Miller continued to believe that the default judgment was a mistake, he believed he his Experian dispute had exhausted his options for removing it from his report.

45. Because the default judgment remained on the report and had led to the original denial, Plaintiffs ceased their efforts to obtain a mortgage as futile.

### Denial of Security Clearance

46. In or around October 2012, Sgt. Miller faced a review for his security clearance eligibility.

47. On October 15, 2012, he received a notice that his clearance had been suspended based on the default judgment against him. *See* Intent to Deny Security Clearance, attached hereto as Exh. I.

48. Significant debt leads to revocation of a security clearance on the theory that it may provide leverage for manipulation.

49. Sgt. Miller's security clearance was suspended based in large part on the default judgment on his credit report.

50. On information and belief, the agents responsible for issuing security clearances rely on the information in credit reports.

51. Though Sgt. Miller had assorted smaller debts, he was able to manage them in a manner sufficient to satisfy a security clearance review. He was not, however, able to manage the $29,418.00 default judgment attributed to him.

52. Sgt. Miller's security clearance was officially revoked on January 19, 2013. *See* Memo Regarding Security Clearance Requirement, attached hereto as Exh. J.

53. At the time his security clearance was suspended and then revoked, Sgt. Miller worked as a flight engineer.

54. His lack of security clearance prevented him from accessing the mainframe, and accordingly, impeded his ability to move to a position that required access to sensitive information.

55. Positions associated with access granted by a security clearance have greater promotion potential than those without.

56. Indeed, at Sgt. Miller's current seniority level, security clearance is necessary for any advancement.

57. Sgt. Miller's security clearance remained suspended for nearly three years, only reinstated after a request for reconsideration filed June 23, 2015.

58. Immediately upon reinstatement of his clearance, he was assigned to the position of aviation support equipment instructor, a position that required a security clearance and that had much greater promotion potential than the flight engineer position. *See* Exh. J.

59. But for his lack of security clearance, based on his seniority, Sgt. Miller likely would have been promoted during the period that his security clearance was suspended.

60. The suspension of Sgt. Miller's security clearance will remain a part of his permanent military record.

**Bankruptcy Filing**

61. Upon suspension of his security clearance, Sgt. Miller sought advice from advisors at Ft. Rucker as to the most expedient way to get his clearance reinstated.

62. Notwithstanding the presumed error with the default judgment, Sgt. Miller was advised to file Chapter 13 bankruptcy in order to show that he was addressing the purported debt at issue. *See* Reconsideration Request, attached hereto as Exh. K.

63. Plaintiff filed their Chapter 13 petition on March 18, 2013.

64. But for the erroneous default judgment report and the resulting loss of Sgt. Miller's security clearance, Plaintiff would not have filed for bankruptcy.

65. The default judgment debt was marked as disputed on Sgt. Miller's bankruptcy petition, and no proof of claim was filed on it.

66. Plaintiffs obtained a discharge, including the alleged default judgment, on May 3, 2016.

67. From the time Defendants inaccurately reported the default judgment, Plaintiffs were unable to obtain credit of any sort. They have continued to live in rental housing and drove a more than decade-old car because they could not get a loan to buy a new one.

68. Following discharge, Sgt. Miller was able to purchase a new (used) car, but only at a 23% interest rate.

### Damages

69. As a result Defendants' inaccurate reporting of the default judgment, Sgt. Miller has suffered numerous and significant damages, including, without limitation, harm to his credit rating, credit denials, long-term career and reputational harm based on the loss of his security clearance, loss of promotion potential, loss of salary that he may have gained from an earlier promotion had his security clearance not been suspended, and emotional distress.

### Servicemembers Civil Relief Act

70. At all times since his enlistment in the Army in 2008, Plaintiff has been on active duty.

71. Pursuant to the Servicemembers Civil Relief Act, Plaintiff's active duty status tolls any applicable statutes of limitations.

### First Cause of Action
### Declaratory Judgment
### (on behalf of Sean and Christine Miller)

72. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

73. Ditech erroneously reported and re-reported to one or more credit reporting agencies that Plaintiffs owe a default judgment on an action from which they were dismissed, to the extent they were proper parties at all.

74. Experian erroneously reported and re-reported that Sgt. Miller owes a default judgment on an action from which he was dismissed.

75. An actual, present and justiciable controversy has arisen between Plaintiffs and Defendants concerning the accuracy of reporting their liability on the default judgment.

76. Plaintiffs seek declaratory judgment from this Court that they have no liability on the default judgment and any reports to the contrary are inaccurate.

### Second Cause Of Action
### Violation Of The Fair Credit Reporting Act
### 15 U.S.C. § 1681 *et seq.* (FCRA)
### (on behalf of Sean Miller, against Ditech)

77. Sgt. Miller incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. Defendant Ditech willfully, or in the alternative negligently, violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute from Experian, by failing to appropriately report the results of its investigation, by failing to appropriately modify, delete, and/or block the information, in reckless disregard of the statutory requirements, the Sgt. Miller's dispute, and the clear dismissal of Plaintiffs from the default judgment action.

79. As a result of each and every willful violation of the FCRA, Sgt. Miller is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Ditech.

80. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Ditech.

### Third Cause Of Action
### Violation Of The Fair Credit Reporting Act
### 15 U.S.C. § 1681 *et seq.* (FCRA)

**(on behalf of Sean Miller, against Experian)**

81. Sgt. Miller incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

82. Defendant Experian willfully or, in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of information concerning Sgt. Miller in Sgt. Miller's consumer reports, in reckless disregard of the statutory requirements, Sgt. Miller's dispute, and the clear dismissal of Plaintiffs from the default judgment action.

83. Defendant Experian willfully, or in the alternative negligently, violated 15 U.S.C. § 1681i in multiple ways including without limitation by failing to conduct a reasonable reinvestigation of Sgt. Miller's dispute and by failing thereafter to appropriately delete or modify information in Sgt. Miller's file and on Sgt. Miller's consumer report, or to mark the debt as disputed, in reckless disregard of the statutory requirements, Sgt. Miller's dispute, and the clear dismissal of Plaintiffs from the default judgment action.

84. As a result of Defendant Experian's violations of §§ 1681e(b) and 1681i, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

85. Defendant Experian's actions and omissions were willful, rendering Experian liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

86. Plaintiff is entitled to recover costs and attorney's fees from Defendant Experian pursuant to 15 U.S.C. §§ 1681n and 1681o.

**Prayer For Relief**

Plaintiff respectfully requests the Court grant Plaintiffs the following relief against Defendants, as appropriate, as follows:

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;

- enter judgment according to the declaratory relief sought;

- an award of costs for the declaratory judgment action; and

- any other relief the Court may deem just and proper.

Dated August 17, 2016

Respectfully submitted on behalf of Plaintiffs,

ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
1101 College Street, P.O. Box 770
Bowling Green, Kentucky 42102-0770
Phone: 270-781-6500

      /s/ Robert A. Young

Courtney L. Weiner (*pro hac vice* pending)
Law Office of Courtney Weiner PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
PH: 202-827-9980
cw@courtneyweinerlaw.com